**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

<table>
<tr><td>

**TIR TECHNOLOGIES LTD.,**

    **Plaintiff,**

**v.**

**COMCAST CABLE COMMUNICATIONS, LLC, COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, NBCUNIVERSAL MEDIA, LLC, AND PEACOCK TV LLC,**

    **Defendants.**

</td><td>

**Court No. 1:25-cv-00885-JCG**

</td></tr>
</table>

## OPINION AND ORDER

[Granting in part and denying in part Defendants' Motion to Dismiss.]

Dated:  June 24, 2026

Stephen B. Brauerman and Ronald P. Golden, III, Bayard, P.A., of Wilmington, DE; Robert A. Auchter, Brett E. Cooper, Seth R. Hasenour, Jonathan Yim, Drew B. Hollander, and John F. Petrsoric, BC Law Group, P.C., of New York, N.Y. Attorneys for Plaintiff Tir Technologies Ltd.

Robert M. Vrana, Young, Conaway, Stargatt, & Taylor, LLP, of Wilmington, DE; James L. Day, Daniel C. Callaway, Su Li, and Nora E. Titus, Farella, Braun + Martel LLP, of San Franciso, CA.  Attorneys for Defendants Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, NBCUniversal Media, LLC, and Peacock TV LLC.

Choe-Groves, Judge:  Plaintiff Tir Technologies Ltd. ("Plaintiff" or "Tir

Tech") filed this case against Defendants Comcast Cable Communications, LLC,

Comcast Cable Communications Management, LLC, NBCUniversal Media, LLC,

and Peacock TV LLC (collectively, "Defendants") alleging infringement of U.S.

Patent Numbers 8,792,347 (the "'347 Patent"), 9,800,633 (the "'633 Patent"),

10,484,442 (the "'422 Patent"), and 10,375,444 (the "'444 Patent") (collectively,

"Asserted Patents").  Compl. (D.I. 1); Second Am. Compl. Patent Infringement

("Second Am. Compl.") (D.I. 49); see U.S. Patent Number 8,792,347 ("'347

Patent") (D.I. 49-2); U.S. Patent Number 9,800,633 ("'633 Patent") (D.I. 49-11);

U.S. Patent Number 10,484,442 ("'422 Patent") (D.I. 49-13); U.S. Patent Number

10,375,444 ("'444 Patent") (D.I. 49-15).

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second

Amended Complaint ("Motion to Dismiss") (D.I. 50).  See Defs.' Opening Br.

Supp. Mot. Dismiss Pl.'s Second Am. Compl. ("Defs.' Br.") (D.I. 51).  The Court

held oral argument on June 9, 2026.  Order (May 11, 2026) (D.I. 58).

For the following reasons, Defendants' Motion to Dismiss is granted in part

and denied in part.

## BACKGROUND

Tir Tech is a company organized under the laws of Ireland, with its principal

place of business in Dublin, Ireland.  Second Am. Compl. at ¶ 2.  Tir Tech is the

owner by assignment of all rights, title, and interest in the Asserted Patents.  Id.

The '347 Patent is titled "Real-time network monitoring and subscriber identification with an on-demand appliance," and was issued by the United States Patent and Trademark Office ("USPTO") on July 29, 2014.  Id. at ¶ 11.  The '633 Patent is titled "Just-in-time distributed video cache," and was issued by the USPTO on October 24, 2017.  Id. at ¶ 24.  The '442 Patent is titled "Just-in-time distributed video cache," and was issued by the USPTO on November 19, 2019.  Id. at ¶ 37.  The '444 Patent is titled "Partial video pre-fetch," and was issued by the USPTO on August 6, 2019.  Id. at ¶ 50.

Tir Tech alleges that Defendants Comcast Cable Communications, LLC and Comcast Cable Communications Management, LLC (collectively, "Comcast Defendants") are Delaware companies with their principal places of business in Pennsylvania; Defendant NBCUniversal Media, LLC ("NBCUniversal") is a Delaware company with its principal place of business in New York; and Defendant Peacock TV LLC ("Peacock") is a Delaware company with its principal place of business in New York.  Id. at ¶¶ 3–6.

Tir Tech alleges that Defendants have directly infringed one or more claims of the Asserted Patents by performing the steps of the claims through their own actions, or by directing or controlling the performance of such steps by third parties, including through the use of content delivery networks ("CDNs") under

Court No. 1:25-cv-00885                                                        Page 4

Defendants' control or through customers and end users acting under conditions established and orchestrated by Defendants.  Id. at ¶¶ 12, 25, 38, 51.  Tir Tech also alleges indirect and willful infringement of the Asserted Patents.  Id. at ¶¶ 17, 22, 30, 35, 43, 48, 55, 60.  Tir Tech identifies the following as the accused products and services: (1) Comcast Defendants' Xfinity Stream service offering the use of multiple content delivery networks, including those of Comcast Technology Solutions and Amazon Web Services; and (2) Defendants NBCUniversal and Peacock's PeacockTV service offering the use of multiple content delivery networks, including those of Amazon Web Services.  Id. at ¶¶ 13–16, 26–29, 39–42, 52–54.

Tir Tech filed its Complaint in July 2025, alleging direct and induced infringement of the Asserted Patents and seeking monetary damages.  Compl. Defendants filed a motion to dismiss on October 6, 2025, which became moot upon Plaintiff's filing of the Amended Complaint on October 28, 2025.  Defs.' Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(6) (D.I. 14); Am. Compl.  Defendants filed a renewed motion to dismiss, which the Court granted on March 11, 2026, with an order for Plaintiff to file a Second Amended Complaint addressing the deficiencies in the Amended Complaint.  Memorandum and Order (Mar. 11, 2026) (D.I. 48); see Defs.' Mot. Dismiss Pl.'s Am. Compl. Pursuant Fed. R. Civ. P. 12(b)(6) (D.I. 31).

Plaintiff filed its Second Amended Complaint on March 25, 2026.  Second Am. Compl.  On April 8, 2026, Defendants filed their renewed Motion to Dismiss, arguing that Tir Tech failed to allege sufficient facts to support its claims for direct and willful infringement of the Asserted Patents, and that it was precluded from reasserting its indirect infringement claims.  See generally, Defs.' Mot. to Dismiss; Defs.' Br.  The Court held Oral Argument on June 9, 2026.  Order (May 11, 2026) (D.I. 58).

## LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which grant the Court jurisdiction over civil actions relating to patents, plant variety protection, copyrights, and trademarks.  28 U.S.C. §§ 1331, 1338.

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(1).  If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Id.  In considering a motion to dismiss, the Court must assume the factual allegations contained in the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 678; see Donald J. Kochan, While Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307 (2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-case, contextual analysis.").

In patent infringement cases, allegations of infringement are governed by the Iqbal/Twombly pleading standard. Golden v. Apple Inc., 819 F. App'x 930, 930–31 (Fed. Cir. 2020).  There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim. Bot M8 LLC v. Sony Corp. ("Bot M8"), 4 F.4th 1342, 1353 (Fed. Cir. 2021).

**DISCUSSION**

## I.     Direct Infringement

Liability for direct infringement arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent[.]" 35 U.S.C. § 271(a).  To plead direct infringement, a plaintiff must recite "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8, 4 F.4th at 1353.  "[A] plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements." Id.  To satisfy the Iqbal pleading standard in a patent case, "[s]pecific facts are not necessary[.]" Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quotation omitted).  The complaint needs to only give a defendant "fair notice of what the [infringement] claim is and the ground upon which it rests." Id. (citation and quotation omitted).

### A.     Plaintiff's Single-Entity Direct Infringement Claims

Defendants argue that Plaintiff pleads a joint infringement theory in which third parties perform some or all steps of the asserted patents. Defs.' Br. at 6. Defendants contend that the Court should dismiss any single-entity direct infringement claim because Plaintiff does not show that any Defendant performs

every step of the Asserted Patents.  Id.  Plaintiff does not address this challenge to the Second Amended Complaint in its answering brief.  See Pl.'s Answering Br. Resp. Defs.' Mot. Dismiss ("Pl.'s Resp. Br.") (D.I. 55).

Plaintiff's failure to address Defendants' arguments amounts to abandonment or waiver of any single-entity direct infringement claims, and the Court dismisses such claims.  See Shaw v. New Castle Cnty., No. 20-950-CFC, 2021 WL 4125648, at *2 (D. Del. Sept. 9, 2021) ("[Plaintiff's] failure to address [defendant's] arguments for dismissal of the remaining claims constitutes abandonment of those claims; and, accordingly, [the court] will dismiss them."); Blakeman v. Freedom Rides, Inc., No. 12-416-LPS-CJB, 2013 WL 3503165, at *13 (D. Del. July 10, 2013) ("[W]here a party responds to a dispositive motion, but only attempts to defend some subset of the claims that are subject to the motion, courts have consistently held that the claims that are not defended are deemed abandoned.").

## B.      Whether Plaintiff Alleges Joint Infringement

### i.      The '347, '633, and '442 Patents

Defendants argue that Plaintiff failed to adequately plead direction and control of the Amazon CDN by Defendants.  Defs.' Br. at 7–11.  Defendants contend that Plaintiff's allegations that Amazon may have a contract with

Defendants are insufficient to plead direction and control and show that Amazon

must perform one or more steps of the '347, '633, and '442 Patents' claims.  Id.

Plaintiff argues that Defendants' arguments regarding a contract with

Amazon are incorrect because they rely on case law that pre-dates the divided

infringement standard set forth by the United States Court of Appeals for the

Federal Circuit in Akamai Techs., Inc. v. Limelight Networks, Inc. ("Akamai"),

797 F.3d 1020, 1022–23 (Fed. Cir. 2015).  Pl.'s Resp. Br. at 6–8.

"While a typical claim of direct infringement requires proof that a defendant

performs each step of the claimed method, joint infringement requires more."

Lyda v. CBS Corp., 838 F.3d 1331, 1338 (Fed. Cir. 2016).  When a patent owner

alleges that multiple parties are involved in practicing the claim steps, a claim of

joint infringement requires "pleading facts sufficient to allow a reasonable

inference that all steps of the claimed method are performed and either (1) one

party exercises the requisite 'direction or control' over the others' performance

or (2) the actors form a joint enterprise such that performance of every step is

attributable to the controlling party."  Id. at 1339 (citing Akamai, 797 F.3d at

1022).  Direction and control may be evident if an actor acts through an agent or

contracts with another to perform one or more steps of the claimed method.

Akamai, 797 F.3d at 1022–23.  Direction and control may also be evident when the

alleged infringer "conditions participation in an activity or receipt of a benefit upon

performance of a step or steps of a patented method and establishes the manner or timing of that performance." Id. at 1023.

In the Second Amended Complaint, Plaintiff alleges upon information and belief that Defendants have a contract with Amazon Web Services, including through a Private Pricing Agreement, for the provision of CDN services by Amazon Web Services, which allegedly results in Defendants directing or controlling the performance of steps of the '347, '633, and '442 Patents by Amazon's CDN. Second Am. Compl. at ¶¶ 14–15, 27–28, 40–41. The Second Amended Complaint's sole support for Plaintiff's allegation regarding the contractual relationship between Defendants and Amazon is an attached webpage that discusses the types of pricing models offered by Amazon CloudFront. Id. at Ex. 2 (D.I. 49-3). The article states that Amazon offers private pricing agreements that customers can negotiate directly with Amazon Web Services, though there is no mention of Defendants. Id.

The Court notes that Plaintiff's allegations regarding the relationship between Defendants and Amazon are pled "upon information and belief," and the claim charts state repeatedly that Defendants are in sole possession of information regarding the accused products. With respect to the permissibility of pleading "upon information and belief," the United States Court of Appeals for the Third Circuit has summarized the state of the law as follows:

> This Court has explained that pleading upon information and belief is permissible "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control"—so long as there are no "*boilerplate and conclusory allegations*" and "*[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible*." In fact, this Court has explained that "[s]everal Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession."

McDermott v. Clondalkin Grp., Inc., 649 F. App'x 263, 267–68 (3d Cir. 2016) (emphasis and alterations in original) (internal citations omitted). The McDermott court held that the plaintiff's pleadings "upon information and belief" were permissible because the defendant was in sole possession of EBITDA information and plaintiff's remaining allegations regarding a breach of contract explained how the alleged breach occurred by relying on factual allegations regarding the defendant's historical financial performance. Id. Applying McDermott in the patent context, the court in DSM IP Assets, B.V. v. Honeywell Int'l, Inc. permitted the limited use of pleading "upon information and belief" because "[m]any of the factual allegations bearing on the issue of infringement were made directly, without the use of the 'information and belief' qualifier." 700 F. Supp. 3d 189, 195–97 (D. Del. 2023).

By contrast, all of Plaintiff's allegations regarding a contractual relationship between Amazon and Defendants are pled "upon information and belief." The only factual allegation in support of the claims that Defendants and Amazon

committed joint infringement is the Amazon webpage stating that Amazon offers pricing plans (which does not mention Defendants). Second Am. Compl. at ¶¶ 14–15, 27–28, 40–41; Ex. 2. Under Iqbal/Twombly, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and the ability of the Court to draw a reasonable inference that a defendant is liable for the misconduct alleged depends on the factual content pled. Iqbal, 556 U.S. at 678. The factual allegations in the Second Amended Complaint are insufficient to make Plaintiff's "theoretically viable claim plausible." McDermott, 649 F. App'x at 267–68. The Court cannot infer reasonably from a web page indicating that Amazon may offer pricing plans that Defendants and Amazon had a contractual relationship and that the terms of the alleged contract also required Amazon to perform most of the steps of the '347, '633, and '442 Patents. Lyda, 838 F.3d at 1338; Akamai, 797 F.3d at 1022–23. Plaintiff has alleged a "sheer possibility" of direction and control, but has not alleged "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678.

The Court concludes that the use of "information and belief" pleading in the Second Amended Complaint is not "consistent with the purposes previously approved by the Third Circuit and other courts." DSM IP Assets, B.V., 700 F. Supp. 3d at 197. Plaintiff's allegations, viewed in the light most favorable to Plaintiff, are insufficient to support an inference that Defendants and Amazon

carry out most of the steps claimed in the '347, '633, and '442 Patents, and that Amazon was subject to the direction and control of Defendants.

Because Amazon's alleged involvement was essential to Plaintiff's theory of joint infringement for the '347, '633, and '442 Patents, the Court concludes that Plaintiff's direct infringement claims for the '347, '633, and '442 Patents can be dismissed at this juncture without further analysis of whether Plaintiff also alleged that Defendants direct and control end users to perform the remaining steps.  The Court need not examine Plaintiff's indirect infringement allegations for the '347, '633, and '442 Patents, which Plaintiff agreed to withdraw regardless, nor must the Court opine on Plaintiff's willful infringement claims for the '347, '633, and '442 Patents.  See Pl.'s Resp. Br. at 1 n.1, 19–21.

Plaintiff has requested that, if the Court is inclined to dismiss any of the claims of the Amended Complaint, it be provided with an opportunity to, yet again, amend its claims.  Id. at 21.  Federal Rule of Civil Procedure states that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court," but a refusal to grant leave should be accompanied by a justifying reason.  Foman v. Davis, 371, U.S. 178, 182 (1962).  Recognized justifications for a denial of leave to amend include "futility of amendment" and the "repeated failure to cure deficiencies by amendments previously allowed[.]"  Id.; see also

Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (holding that an amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted.).

After considering the record in this case and Plaintiff's representations during oral argument, which did not provide specific information regarding how it could amend the complaint to comply with the applicable pleading requirements, the Court concludes that denial of the request to amend is appropriate. Plaintiff has already had three prior opportunities to plead its claims (including twice after seeing Defendants' motions to dismiss), and neither of the previous iterations of its complaint provided new factual allegations that were sufficient to state a plausible claim of infringement for the '347, '633, and '442 Patents. The Court holds that it would be unfairly prejudicial to permit Plaintiff yet another chance (which would be its fourth attempt at drafting a sufficient complaint) given its repeated inability to cure the same deficiencies. See Mullin v. Balicki, 875 F.3d 140, 149 (3d Cir. 2017) (holding that denial of leave to amend can be based on repeated failure to cure deficiencies and prejudice to opposing party).

###         ii.        The '444 Patent

Defendants argue that Plaintiff's allegations regarding the provision of software to end users are insufficient to plead the type of direction and control necessary for joint infringement of the '444 Patent. Defs.' Br. at 9–11.

Plaintiff contends that the software code provided to users by Defendants is a necessary requirement for the use of Defendants' streaming services and is sufficient to show that Defendants condition the receipt of certain benefits upon users' performance of the steps of the '444 Patent and establish the manner or timing of that performance.  Pl.'s Resp. Br. at 8–12.

In the Second Amended Complaint, Plaintiff alleges that Defendants direct or control the performance of each step of the limitations of the '444 Patent by providing software to end users of the Xfinity Stream and PeacockTV applications. Second Am. Compl. at ¶¶ 52–54.  Plaintiff alleges that Defendants condition the receipt of the benefits of the streaming services upon end users performing the steps of the '444 Patent and Defendants establish the manner and timing of that performance.  Id.  In the claim chart for the '444 Patent, Plaintiff alleges that the client application code provided by Defendants must be employed for users to access video streaming services.  Id. at Ex. 15 ("'444 Claim Chart") (D.I. 49-16).

From the allegations in the Second Amended Complaint, it is plausible to infer that Defendants' client application code is not an optional set of instructions or guidelines that users could ignore, but that users can only obtain the benefits of the streaming services through the performance of the steps of the '444 Patent.  See e.g., '444 Claim Chart at 11–12, 15–16, 19 (describing how user selection of media initiates performance of claim steps such as pre-fetching a portion of an embedded

media file, retrieving segments of media for playback, and requesting the next segment).

At this stage of the proceedings and accepting Plaintiff's factual allegations as true, the Court concludes that Plaintiff's joint infringement claim for the '444 Patent is alleged sufficiently based on Defendants' conditioning of benefits to end users.  See Lyda, 838 F.3d at 1339; Akamai, 797 F.3d at 1022–23.  Plaintiff's allegations provide enough facts "'to raise a reasonable expectation that discovery will reveal evidence' to support plaintiff's allegations," which is all that the plausibility standard requires of Plaintiff at this stage.  Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting Twombly, 550 U.S. at 556).

Accordingly, the Court will proceed with examining Defendants' remaining arguments regarding direct infringement of the '444 Patent.

## C.    The '444 Patent

Defendants argue that Plaintiff still fails to allege direct infringement of the '444 Patent because the '444 Patent recites that "only the first portion of the embedded media file is stored in the file cache of the user device," while Plaintiff's claim chart identifies the storing of multiple segments on the user device, which was disclaimed during prosecution of the '444 Patent.  Defs.' Br. at 17–18.  Defendants request the Court to take notice of the prosecution history.  Id. at 17 n.7.

Plaintiff argues that Defendants' reliance on the prosecution history is misplaced, and Plaintiff's allegations do not contradict the prosecution history. Pl.'s Resp. Br. at 17–19.

The '444 Patent teaches a method for "partial pre-fetching of source files from an origin server for playback." '444 Patent at Abstract. Claim 1 of the '444 Patent recites "[a] computer-implemented method for playback of online content on a user device," that comprises several steps, including the following:

> [I]n response to providing last data from the first portion of the embedded media file from the file cache for playback, switching to providing data from the next portion of the embedded media file, the next portion and one or more remaining portions of the embedded media file being streamed to the user device by an origin server, *wherein only the first portion of the embedded media file is stored in the file cache of the user device*[.]

'444 Patent at 15:28–30; 15:43–50 (emphasis added). The Court agrees that the prosecution history is relevant to this proceeding and takes judicial notice of the document. See Decl. of Su Li, Ex. B ("'444 Patent Prosecution History") (D.I. 52-2); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d. Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."); Genetic Techs. Ltd. v. Bristol–Myers Squibb Co., 72 F.Supp.3d 521, 526 (D. Del. 2014), aff'd sub nom, Genetic Techs. Ltd. v. Merial

Court No. 1:25-cv-00885                                    Page 18

L.L.C., 818 F.3d 1369 (Fed. Cir. 2016) (noting that a court may also take judicial

notice of prosecution histories, which are public records).

During prosecution, Claim 1 of the '444 Patent was rejected under 35 U.S.C.

§ 103 as being unpatentable over Ma et al. (US 2013/0097309) in view of Brueck

et al. (US 2008/0195743) ("Brueck"). '444 Patent Prosecution History at 109.

Brueck disclosed a method for multi-bitrate content streaming, with media content

separated into a set of streamlets, and, upon request, a streamlet cache module

checked the streamlet cache on the client device to verify if a streamlet was

present. Id. at 140. In Brueck's method, the streamlet cache stored multiple

streamlets of media content locally on a client device, rather than stream them

from an origin server. Id. To distinguish the '444 Patent from Brueck, it was

noted that "[b]y contrast, the claimed method does not store multiple segments of a

source file on the client device, but rather stores only a pre-fetch portion (e.g., the

first 5–30 seconds of a video) in the local cache." Id. As argued during

prosecution, Brueck failed to teach the following portion of Claim 1 of the '444

Patent:

> [I]n response to providing last data from the first portion of the media
> file from the file cache for playback, switching to providing data from
> the next portion of the media file, the next portion and subsequent
> portions of the media file being streamed to the user device by an
> origin server.

Id.  Because the prosecution history distinguished the '444 Patent by its ability to store only a pre-fetch portion in the local cache and then retrieve the remaining portions from an origin server, rather than also store those segments in the local cache, Defendants contend that Plaintiff's allegations in the claim chart allege the disclaimed feature.  Defs.' Br. at 17–18.

Plaintiff's claim chart for the '444 Patent alleges that playback begins when a video player requests a manifest file and the player downloads the first segment in the manifest.  '444 Claim Chart at 11–12.  This first segment is kept in a "temporary file cache on the user's device."  Id. at 12.  The claim chart alleges that "Xfinity Stream and PeacockTV can store media segments in the browser built-in SourceBuffer."  Id.  The adaptive streaming logic ensures that "there is always a buffer of segments queued up."  Id. at 15–16.  "In response to user playback, the Xfinity Stream or PeacockTV application retrieves the prefetched segment from the file cache for immediate playback while concurrently requesting the next segment to ensure continuous streaming."  Id. at 19.  The claim chart alleges that only a small initial portion of each video file is stored in the device's file cache for immediate playback, and as playback commences, "subsequent segments are streamed from the CDN and held in the buffer memory[.]"  Id. at 24.  The claim chart avers that further portions of the embedded media file are fetched and buffered as playback occurs.  Id. at 23.

Court No. 1:25-cv-00885                                                      Page 20

At this stage of the proceedings and drawing all reasonable inferences in favor of non-movant Plaintiff, the Court will not conclude that Plaintiff's claim chart contradicts the prosecution history and claims of the '444 Patent such that Plaintiff's infringement allegations must be dismissed.  Although the claim chart includes allegations that "Xfinity Stream and PeacockTV can store media segments in the browser built-in SourceBuffer," it is reasonable to infer from the surrounding language that the claim chart could be referring to the initial portion of different media files, rather than all the segments of one media file.  Similarly, the claim chart's assertion that that "there is always a buffer of segments queued up" does not obviate that the segments are stored locally on the user device, particularly given Plaintiff's later statement that the fetching and buffering occurs as playback commences.  See '444 Claim Chart at 15–16, 23.

The Court concludes that Plaintiff's claim of direct infringement of the '444 Patent is pled sufficiently to obtain discovery on the alleged implementation of this contested limitation.  Defendants' Motion to Dismiss on this basis is denied.

## II.    Induced Infringement

Defendants argue that Plaintiff's induced infringement claims must be dismissed and stricken from the Second Amended Complaint due to Plaintiff's failure to seek leave of the Court to amend pursuant to Federal Rule of Civil Procedure 15(a).  Defs.' Br. at 18–20.

In response, Plaintiff agreed to withdraw its allegations of induced infringement in the Second Amended Complaint, and stated that it will seek leave to amend at a later time.  Pl.'s Resp. Br. at 1 n.1.  Accordingly, the Court need not opine on whether Plaintiff alleged induced infringement of the '444 Patent sufficiently, and paragraphs 55–56, and 59 of the Second Amended Complaint are deemed dismissed.

## III.    Willful Infringement of the '444 Patent

Under 35 U.S.C. § 284, the Court may increase the amount of damages assessed by up to three times.  35 U.S.C. § 284.  The U.S. Supreme Court has observed that enhanced damages:

> are not to be meted out in a typical infringement case, but are instead designed as a "punitive" or "vindictive" sanction for egregious infringement behavior.  The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.

Halo Elecs., Inc. v. Pulse Elecs. Inc. ("Halo"), 579 U.S. 93, 103–04 (2016).

For willful infringement claims, "the patentee must allege facts in its pleading plausibly demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim[.]"  Välinge Innovation AB v. Halstead New England Corp., No. 16-cv-1082-LPS-CJB, 2018 WL 2411218, at *12 (D. Del. May 29, 2018), report and recommendation adopted, 2018 WL 11013901 (D. Del. Nov. 6, 2018).

"The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." Halo, 579 U.S. at 105; see also WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages."). Subjective willfulness may be found when "the risk of infringement 'was either known or so obvious that it should have been known to the accused infringer.'" Halo, 579 U.S. at 101 (quoting In re Seagate Techs., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

At the pleading stage, this standard can be distilled into three elements, that the accused infringer: (1) was aware of the patent, (2) infringed the patent after becoming aware of its existence, and (3) knew or should have known that its conduct amounted to infringement. See Välinge Innovation AB, 2018 WL 2411218, at *13. The Court need not evaluate whether each allegation, taken alone, gives rise to a reasonable inference of pre-suit knowledge of the patent, but may consider the allegations as a whole. Elm 3DS Innovations, LLC v. Samsung Elecs. Co., No. 14-cv-1430, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015), report and recommendation adopted, 2016 WL 1274812 (D. Del. Mar. 21, 2016); SoftView LLC v. Apple Inc., No. 10-389-LPS, 2012 WL 3061027, at *6 (D. Del. July 26, 2012).

Defendants argue that Plaintiff failed to plead willful infringement properly because the original Complaint did not adequately allege infringement by any Defendant and the claim charts did not address any of the Comcast Defendants' products. Defs.' Br. at 20–21. Although the original Complaint addressed the PeacockTV streaming service, Defendants aver that the original complaint failed to sufficiently allege infringement. Id. Because Plaintiff did not file an opposition to Defendants' original motion to dismiss and filed the Amended Complaint instead, Defendants contend that Plaintiff conceded that the original Complaint did not provide knowledge of infringement. Id. at 20–21. Defendants argue further that the willful infringement claim is conclusory because the Second Amended Complaint does not provide any facts supporting an inference that Defendants deliberately or intentionally infringed. Id. at 21–22.

Plaintiff responds that Defendants are seeking to impose a heightened standard for pleading infringement by arguing that the original Complaint must have alleged infringement adequately. Pl.'s Resp. Br at 19–21. Plaintiff recites the standard for pleading a claim of willful infringement and avers that the Court need only determine whether Defendants were provided with fair notice of the claim rather than "whether there is ultimately merit in that claim." Id. at 20. Plaintiff requests that if the Court grants the Motion to Dismiss the claim of willful infringement, or any portion of Defendants' Motion to Dismiss, then Plaintiff be

given leave to amend its willful infringement claim to connect it to the filing of the Second Amended Complaint.  Id. at 20–21.

This Court has held previously that an original complaint, later superseded by an amended complaint, is sufficient to support a post-suit willful infringement claim at the motion to dismiss stage.  See e.g., Technoprobe S.p.A. v. Formfactor, Inc., C.A. No. 230842-JCG, 2024 WL 2271885, at *8 (D. Del. May 20, 2024); Staton Techiya, LLC v. Harman International Industries, Inc., 734 F. Supp. 3d 354, 367–68 (D. Del. 2024).  The Court finds no indication in the case law that the pleading standard for a willful infringement claim becomes heightened by the filing of an amended complaint.  Plaintiff need only allege facts plausibly demonstrating that Defendants were aware of the '444 Patent, infringed the '444 Patent after gaining such awareness, and knew or should have known that their conduct amounted to infringement.  See Välinge Innovation AB, 2018 WL 2411218, at *13.

In the Second Amended Complaint, the extent of Plaintiff's willful infringement claim for the '444 Patent is the following :

> Defendants obtained knowledge of the '444 Patent and that the [Accused Products and Services] infringe the '444 Patent at least as of the filing and service of the original Complaint (Dkt. No. 1). Defendants' infringement of the '444 Patent has been and continues to be willful and deliberate since the filing and service of the original Complaint.  At present, Plaintiff does not allege that Defendants willfully infringed the '444 Patent prior to the filing and service of the original Complaint.

Second Am. Compl. at ¶ 60.  The original Complaint named the current Defendants, alleged infringement of the '444 Patent, and identified the "Accused Products and Services" as including Comcast Content Delivery Network, Comcast Media360, Xfinity Stream, and PeacockTV.  Compl. ¶¶ 40–49.  However, the Complaint did not provide further factual allegations explaining how the Comcast Defendants' products infringed the '444 Patent, and the claim chart connected the '444 Patent to Defendants NBC Universal and Peacock only.  See generally, id.; id. at Ex. 14 (D.I. 1-14).  The Court cannot draw a plausible inference in Plaintiff's favor that the Comcast Defendants committed subjective willful infringement as of the filing and service of the original Complaint because the original Complaint did not contain factual allegations sufficient to infer that the Comcast Defendants' Accused Products and Services satisfied the claim limitations of the Asserted Patents or that the Comcast Defendants had notice of what conduct of theirs amounted to infringement.  See Välinge Innovation AB, 2018 WL 2411218, at *12–13.  As held previously by this Court, the Amended Complaint also failed to allege direct infringement by the Comcast Defendants.  See Memorandum and Order (Mar. 11, 2026) (D.I. 48).  Accordingly, Plaintiff's willful infringement claim for the '444 Patent is dismissed with respect to the Comcast Defendants. Because Plaintiff's direct infringement claim for the '444 Patent survives today,

the Court grants Plaintiff leave to amend its willful infringement claim for the '444

Patent.

## CONCLUSION

Upon consideration of Defendants' Motion to Dismiss (D.I. 50), and all

other papers and proceedings in this action, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (D.I. 50) is granted in part

and denied in part; and it is further

**ORDERED** that Plaintiff's joint infringement, induced infringement, and

willful infringement claims for the '347, '633, and '442 Patents are dismissed with

prejudice; and it is further

**ORDERED** that Plaintiff's induced infringement claim for the '444 Patent

is deemed withdrawn and dismissed without prejudice; and it is further

**ORDERED** that Plaintiff's willful infringement claim for the '444 Patent is

dismissed without prejudice; and it is further

**ORDERED** that Plaintiff shall file a Third Amended Complaint on or

before July 7, 2026; and it is further

**ORDERED** that Defendants shall respond to the Third Amended Complaint

on or before July 21, 2026; and it is further

**ORDERED** that on or before July 24, 2026, the Parties shall meet and

confer and file a joint proposed Scheduling Order in this action consistent with the

Court No. 1:25-cv-00885                                                    Page 27

applicable form Scheduling Order of Judge Connolly, which is posted at

https://www.ded.uscourts.gov/ (See Chambers, Chief Judge Colm F. Connolly),

with a cover letter requesting the Court to enter the joint proposed Scheduling

Order (if there are no disputes or other issues concerning scheduling that the Court

needs to address) or to schedule the Scheduling Conference.  If the Parties are

unable to agree upon a proposed scheduling order, each Party shall file a proposed

scheduling order by the deadline and contact my Case Manager, Steve Taronji, by

telephone at (212) 264-1611 or via e-mail at steve_taronji@cit.uscourts.gov, to

arrange a conference with the Court.


      IT IS SO ORDERED this 24th day of June, 2026.


                      /s/ Jennifer Choe-Groves
                      Jennifer Choe-Groves
                      U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.