**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **TIR TECHNOLOGIES LIMITED,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COMCAST CABLE COMMUNICATIONS, LLC, COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, NBCUNIVERSAL MEDIA, LLC, AND PEACOCK TV LLC,**<br><br>**Defendants.** | **Court No. 1:25-cv-00885-JCG** |

**OPINION AND ORDER**

[Granting Plaintiff's Motion for Clarification and Reargument and granting Defendants' Motion to Strike Improper Infringement Contentions.]

Dated: November 3, 2026

Stephen B. Brauerman and Ronald P. Golden, III, Bayard, PA, of Wilmington, DE; Robert A. Auchter, Brett E. Cooper, Seth R. Hasenour, Jonathan Yim, Drew B. Hollander, and John F. Petrsoric, BC Law Group, P.C., of New York, N.Y. Attorneys for Plaintiff Tir Technologies Limited.

Robert M. Vrana and Colin A. Keith, Young Conaway Stargatt & Taylor, LLP, of Wilmington, DE; James L. Day, Daniel C. Callaway, and Nora E. Titus, Farella, Braun + Martel LLP, of San Francisco, CA. Attorneys for Defendants Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, NBCUniversal Media, LLC, and Peacock TV LLC.

Choe-Groves, Judge: Plaintiff Tir Technologies Limited ("Plaintiff" or "Tir Tech") filed this case against Defendants Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, NBCUniversal Media, LLC, and Peacock TV LLC (collectively, "Defendants") alleging infringement of U.S. Patent Numbers 8,792,347 (the "'347 Patent"), 9,800,633 (the "'633 Patent"), 10,484,442 (the "'442 Patent"), and 10,375,444 (the "'444 Patent") (collectively, "Asserted Patents"). Compl. Patent Infringement ("Compl.") (D.I. 1); Second Am. Compl. Patent Infringement ("Second Am. Compl.") (D.I. 49); see U.S. Patent Number 8,792,347 ("'347 Patent") (D.I. 49-2); U.S. Patent Number 9,800,633 ("'633 Patent") (D.I. 49-11); U.S. Patent Number 10,484,442 ("'442 Patent") (D.I. 49-13); U.S. Patent Number 10,375,444 ("'444 Patent") (D.I. 49-15).

Before the Court are Plaintiff's Motion for Clarification and Reargument ("Pl.'s Mot." or "Plaintiff's Motion") (D.I. 61) and Defendants' Motion to Strike Improper Infringement Contentions ("Defendants' Motion to Strike" or "Defs.' Mot. Strike") (D.I. 82). See Defs.' Resp. Pl.'s Mot. Clarification and Reargument ("Defs.' Resp.") (D.I. 63); see Defendants' Letter Supp. Mot. Strike Improper Infringement Contentions ("Defs.' Letter") (D.I. 83); Pl.'s Letter Opp. Defs.' Mot. Strike Improper Infringement Contentions ("Pl.'s Letter") (D.I. 85). Plaintiff's Motion for Clarification and Reargument is construed as a Motion for Reconsideration under Federal Rule of Civil Procedure 59(e). See, e.g., Kelly v.

Swartz, No. CV 21-1490-CFC, 2021 WL 7209530, at *1 (D. Del. Dec. 22, 2021), aff'd, No. 21-3198, 2023 WL 3018282 (3d Cir. Apr. 20, 2023) (affirming denial of motion for reargument construed as motion for reconsideration).

For the following reasons, Plaintiff's Motion for Clarification and Reargument construed as a Motion for Reconsideration is granted and Defendants' Motion to Strike Improper Infringement Contentions is granted.

## BACKGROUND

Tir Tech is a company organized under the laws of Ireland, with its principal place of business in Dublin, Ireland. Second Am. Compl. ¶ 2. Tir Tech is the owner by assignment of all rights, title, and interest in the Asserted Patents. Id.

The '347 Patent is titled "Real-time network monitoring and subscriber identification with an on-demand appliance," and was issued by the United States Patent and Trademark Office ("USPTO") on July 29, 2014. Id. ¶ 11. The '633 Patent is titled "Just-in-time distributed video cache," and was issued by the USPTO on October 24, 2017. Id. ¶ 24. The '442 Patent is titled "Just-in-time distributed video cache," and was issued by the USPTO on November 19, 2019. Id. ¶ 37. The '444 Patent is titled "Partial video pre-fetch," and was issued by the USPTO on August 6, 2019. Id. ¶ 50.

Tir Tech alleges that Defendants Comcast Cable Communications, LLC and Comcast Cable Communications Management, LLC (collectively, "Comcast

Defendants") are Delaware companies with their principal places of business in Pennsylvania, Defendant NBCUniversal Media, LLC ("NBCUniversal") is a Delaware company with its principal place of business in New York, and Defendant Peacock TV LLC ("Peacock") is a Delaware company with its principal place of business in New York. Id. ¶¶ 3–6.

Tir Tech alleges that Defendants have directly infringed one or more claims of the Asserted Patents by performing the steps of the claims through their own actions, or by directing or controlling the performance of such steps by third parties, including through the use of content delivery networks ("CDNs") under Defendants' control or through customers and end users acting under conditions established and orchestrated by Defendants. Id. ¶¶ 12, 25, 38, 51. Tir Tech also alleges indirect and willful infringement of the Asserted Patents. Id. ¶¶ 17, 22, 30, 35, 43, 48, 55, 60. Tir Tech identifies the following as the accused products and services: (1) Comcast Defendants' Xfinity Stream service offering the use of multiple content delivery networks, including those of Comcast Technology Solutions and Amazon Web Services and (2) Defendants NBCUniversal and Peacock's PeacockTV service offering the use of multiple content delivery networks, including those of Amazon Web Services. Id. ¶¶ 13–16, 26–29, 39–42, 52–54.

Tir Tech filed its Complaint in July 2025, alleging direct and induced infringement of the Asserted Patents and seeking monetary damages. Compl. Defendants filed a motion to dismiss on October 6, 2025, which became moot upon Plaintiff's filing of the Amended Complaint on October 28, 2025. Defs.' Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(6) ("Defendants' Motion to Dismiss" or "Defs.' Mot.") (D.I. 14); Am. Compl. Patent Infringement ("Am. Compl.") (D.I. 27). Defendants filed a renewed motion to dismiss that the Court granted on March 11, 2026, with an order for Plaintiff to file a Second Amended Complaint addressing the deficiencies in the Amended Complaint. Opinion and Order (Mar. 11, 2026) (D.I. 48); see Defs.' Mot. Dismiss Pl.'s Am. Compl. Pursuant Fed. R. Civ. P. 12(b)(6) ("Defendants' Renewed Motion to Dismiss" or "Defs.' Renewed Mot.") (D.I. 31).

Plaintiff filed its Second Amended Complaint on March 25, 2026. Second Am. Compl. Defendants filed a Motion to Dismiss that the Court granted in part and denied in part on June 24, 2026, with an order for Plaintiff to file a Third Amended Complaint addressing the deficiencies in the Second Amended Complaint. Opinion and Order (June 24, 2026) ("Opinion and Order") (D.I. 59); see Defs.' Mot. Dismiss Pl.'s Second Am. Compl. (D.I. 50).

Plaintiff filed its Third Amended Complaint on July 7, 2026. Third Am. Compl. (D.I. 60). Plaintiff filed a Motion for Clarification and Reargument, and

Defendants filed a Response to Plaintiff's Motion for Clarification and Reargument, arguing that Tir Tech failed to identify an intervening change of law, newly discovered evidence, or clear error of law or fact for which reargument may be granted. See generally Defs.' Resp. The Court held Oral Argument on September 9, 2026. Oral Order (August 24, 2026) (D.I. 70).

## LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which grant the Court jurisdiction over civil actions relating to patents, plant variety protection, copyrights, and trademarks. 28 U.S.C. §§ 1331, 1338.

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(1). If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility requires "more

than a sheer possibility that a defendant has acted unlawfully." Id. In considering a motion to dismiss, the Court must assume the factual allegations contained in the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Twombly, 550 U.S. at 555–56. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 678; see Donald J. Kochan, While Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307 (2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-case, contextual analysis.").

In patent infringement cases, allegations of infringement are governed by the Iqbal/Twombly pleading standard. Golden v. Apple Inc., 819 F. App'x 930, 930–31 (Fed. Cir. 2020). There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim. Bot M8 LLC v. Sony Corp. ("Bot M8"), 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## DISCUSSION

Plaintiff argues that reargument is appropriate to: (1) address an independent ground for alleging infringement of the '347, '633, and '442 Patents regarding Defendants' Comcast Technology Solutions CDN not addressed in the Opinion

and Order and (2) reconsider the dismissal of the infringement allegations for the ’347, ’633, and ’442 Patents regarding Defendants’ use of the Amazon Web Services CDN.[1] Pl.’s Mot. at 1–2.

## I. Joint Direct Infringement of the ’347, ’633, and ’442 Patents by the Comcast Technology Solutions CDN

Liability for direct infringement arises when a party “without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent[.]” 35 U.S.C. § 271(a). To plead direct infringement, a plaintiff must recite

---

[1] “Reargument under the District of Delaware’s local rules attempts to balance the interests in obtaining a final decision on matters presented to the Court and the recognition that the Court, like all others, is capable of mistake and oversight. Well-grounded motions for reargument thus present the court with an opportunity to correct erroneous rulings.” Morningred v. Delta Fam.-Care & Survivorship Plan, 790 F. Supp. 2d 177, 191 (D. Del. 2011) (footnotes and quotation marks omitted). District of Delaware Local Rule 7.1.5 specifies that such motions “shall be sparingly granted.” D. Del. LR 7.1.5. Such circumstances may arise when “the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension.” Johnson v. Diamond State Port Corp, 50 F. App’x 554, 560 (3d Cir. 2002) (quoting Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1241 (D. Del. 1990)). Reargument may also be appropriate on similar grounds as a motion for reconsideration when there is “(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its previous decision]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice.” In re Syngenta Crop Protection AG, No. CV 21-375-CFC, 2022 WL 3153858, at *1 (D. Del. Aug. 8, 2022) (quoting Max’s Seafood Cafe ex rel. Lou-Ann, Inc. v. Quniteros, 176 F.3d 669, 677 (3d Cir. 1999) (discussing standard for motion to alter or amend a judgement under Fed. R. Civ. P. 59(e))).

"some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8, 4 F.4th at 1353. "[A] plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements." Id. To satisfy the Iqbal pleading standard in a patent case, "[s]pecific facts are not necessary[.]" Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quotation omitted). The complaint needs to only give a defendant "fair notice of what the [infringement] claim is and the ground upon which it rests." Id. (citation and quotation omitted).

"While a typical claim of direct infringement requires proof that a defendant performs each step of the claimed method, joint infringement requires more." Lyda v. CBS Corp., 838 F.3d 1331, 1338 (Fed. Cir. 2016). When a patent owner alleges that multiple parties are involved in practicing the claim steps, a claim of joint infringement requires "pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." Id. at 1339 (citing Akamai Techs., Inc. v. Limelight Networks, Inc. ("Akamai"), 797 F.3d 1020, 1022 (Fed. Cir. 2015). Direction and control may be evident if an actor acts through an agent or contracts

with another to perform one or more steps of the claimed method. Akamai, 797 F.3d at 1022–23. Direction and control may also be evident when the alleged infringer "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." Id. at 1023.

Defendants are correct that this Court addressed and rejected Plaintiff's theory that the Comcast Technology Solutions CDN performs most of the claim steps as alleged in Plaintiff's Amended Complaint in this Court's Opinion and Order (Mar. 11, 2026). Opinion and Order (Mar. 11, 2026) at 7–10; Defs.' Resp. at 3–6. The Court acknowledges Plaintiff's argument that this Court's Opinion and Order did not address this theory as alleged in Plaintiff's Second Amended Complaint. Pl.'s Mot. at 1–2. Reconsideration of the independent grounds for alleging infringement of the '347, '633, and '442 Patents regarding the Comcast Technology Solutions CDN is therefore appropriate.

In the Second Amended Complaint, Plaintiff alleges that, upon information and belief, Defendants through their Xfinity Stream service and using the Comcast Technology Solutions CDN, perform most of the steps of and direct or control the performance by end users of the remaining steps of the '347, '633, and '442 Patents. Second Am. Compl. ¶¶ 13, 18, 26, 31, 39, 44. The corresponding claim charts for each Asserted Patent explain and illustrate how the claims are performed

by alleging facts related to Amazon Web Services CDN and services, Comcast Technology Solutions CDN and services, Consumer Technology Association ("CTA") specifications, and Streaming Video Technology Alliance ("SVTA") standards. Second Am. Compl., Ex. 3 ("'347 Claim Chart") (D.I. 49-4); id. at Ex. 11 ("'633 Claim Chart") (D.I. 49-12); id. at Ex. 13 ("'442 Claim Chart") (D.I. 49-14).

Following descriptions of the Amazon Web Services CDN and services, Comcast Technology Solutions CDN and services, and CTA and SVTA standards, the claim charts include variations of the following assertion that "[a] person of ordinary skill in the art would understand that." See, e.g., '347 Claim Chart at 36, 42, 45; '633 Claim Chart at 15, 29–30, 40–41; '442 Claim Chart at 21, 23, 32, 38, 48, 51–52, 54, 58, 68. Throughout the claim charts, Plaintiff avers that certain specifics regarding the functionality of Comcast Technology Solutions' CDN, Xfinity Stream, or PeacockTV are within the sole possession, custody, or control of Defendants. See, e.g., '347 Claim Chart at 13, 18, 27, 32, 38, 42, 46; '633 Claim Chart at 8, 10, 21, 29, 40–41, 44, 47, 48; '442 Claim Chart at 10, 24, 38, 52, 54, 58, 65, 69.

Defendants argue that Plaintiff's allegations regarding the provision of software to end users are insufficient to plead the type of direction and control

necessary for joint direct infringement of the ’347, ’633, and ’442 Patents. Defs.’ Br. at 9–11.

Plaintiff contends that the software code provided to users by Defendants is a necessary requirement for the use of Defendants’ streaming services that is sufficient to show that Defendants condition the receipt of certain benefits upon users’ performance of the steps of the ’347, ’633, and ’442 Patents, and establishes the manner or timing of that performance. Pl.’s Br. at 8–12.

In the Second Amended Complaint, Plaintiff alleges that Defendants direct or control the performance of each step of the limitations of the ’347, ’633, and ’442 Patents by providing software to end users of the Xfinity Stream and PeacockTV applications. Second Am. Compl. ¶¶ 12–15, 25–28, 38–41. Plaintiff alleges that Defendants condition the receipt of the benefits of the streaming services upon end users performing the steps of the ’347, ’633, and ’442 Patents, and Defendants establish the manner and timing of that performance. Id. In the claim charts for the ’347, ’633, and ’442 Patents, Plaintiff alleges that the client application code provided by Defendants must be employed for users to access video streaming services. See generally id.; ’347 Claim Chart;’633 Claim Chart; ’442 Claim Chart.

From the allegations in the Second Amended Complaint, it is plausible to infer that Defendants’ client application code is not an optional set of instructions

or guidelines that users could ignore, but that users can only obtain the benefits of the streaming services through the performance of the steps of the ’347, ’633, and ’442 Patents. See, e.g., ’347 Claim Chart at 45–46 (describing how the user initiates connections and queries through the client application and player); ’633 Claim Chart at 45–48 (describing how the video player on the client device requests segments of content, assesses network speed and quality, and stitches the content for playback); ’442 Claim Chart at 58–68 (describing how the video player on the client device requests segments of content, assesses network speed and quality, and stitches the content for playback).

At this stage of the proceedings and accepting Plaintiff’s factual allegations as true, the Court concludes that Plaintiff’s joint direct infringement claims for the ’347, ’633, and ’442 Patents are alleged sufficiently based on Defendants’ conditioning of benefits to end users. See Lyda, 838 F.3d at 1339; Akamai, 797 F.3d at 1022–23. Plaintiff’s allegations provide enough facts "‘to raise a reasonable expectation that discovery will reveal evidence’ to support the plaintiff’s allegations," which is all that the plausibility standard requires of Plaintiff at this stage. Nalco Co. v. Chem-Mod, LLC ("Nalco"), 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting Twombly, 550 U.S. at 556).

Accordingly, the Court will proceed with examining Defendants’ remaining arguments regarding joint direct infringement of the ’347, ’633, and ’442 Patents.

Plaintiff's allegations regarding the '347 Patent and Defendants' Xfinity Stream service and the Comcast Technology Solutions CDN are pled "[u]pon information and belief" that Comcast uses the Common Media Client Data version 2 ("CMCD v2") CTA standard, supported by an attached webpage stating that "Comcast is already integrating CMCD v2 into major open-source players like Shaka and dash.js." See, e.g., Second Am. Compl. ¶ 13; '347 Claim Chart at 10–11. Similarly, Plaintiff's allegations regarding the '633 and '442 Patents, Defendants' Xfinity Stream service, and the Comcast Technology Solutions CDN are pled "[u]pon information and belief" that Comcast uses the Open Caching SVTA standard, supported by an attached webpage that discusses that "Qwilt's Open Edge platform software and services[] provides Quality-as-a-Service content delivery by performing content caching and delivery functions in edge compute and caching clusters deep within Comcast's network." See, e.g., Second Am. Compl. ¶¶ 26, 39; '633 Claim Chart at 6; '442 Claim Chart at 7. "Qwilt's solution is based on Open Caching, a set of open specifications developed by the Streaming Video Technology Alliance (SVTA)." See, e.g., '633 Claim Chart at 6; '442 Claim Chart at 7.

With respect to the permissibility of pleading "upon information and belief," the U.S. Court of Appeals for the Third Circuit has summarized the state of the law as follows:

> This Court has explained that pleading upon information and belief is permissible "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control"—so long as there are no "*boilerplate and conclusory allegations*" and "*[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible*." In fact, this Court has explained that "[s]everal Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession."

McDermott v. Clondalkin Grp., Inc., 649 F. App'x 263, 267–68 (3d Cir. 2016) (emphasis and alterations in original) (internal citations omitted). The McDermott court held that the plaintiff's pleadings "upon information and belief" were permissible because the defendant was in sole possession of operating profitability information and the plaintiff's remaining allegations regarding a breach of contract explained how the alleged breach occurred by relying on factual allegations regarding the defendant's historical financial performance. Id. Applying McDermott in the patent context, the court in DSM IP Assets, B.V. v. Honeywell Int'l, Inc. ("DSM IP") permitted the limited use of pleading "upon information and belief" because "[m]any of the factual allegations bearing on the issue of infringement were made directly, without the use of the 'information and belief' qualifier." 700 F. Supp. 3d 189, 195–97 (D. Del. 2023).

Defendants argue that Plaintiff presents mere speculation that the Comcast Technology Solutions CDN infringes limitation [1g] of claim 1 of the '347 Patent. Defs.' Opening Brief Supp. Mot. Dismiss Pl.'s Second Am. Compl. ("Defs.' Br.")

(D.I. 51) at 13–14. Defendants assert that Plaintiff merely speculates that the Comcast Technology Solutions CDN employs capacity management systems such as a CDN balancer based on the alleged functionality of the Amazon Web Services CDN. Id. Plaintiff counters that Defendants ignore the allegations and that the supporting factual allegations in the '347 Claim Chart collectively demonstrate that the Comcast Technology Solutions CDN operates similarly to the Amazon Web Services CDN. Pl.'s Answering Br. Resp. Defs.' Mot. Dismiss ("Pl.'s Br.") (D.I. 55) at 13–14.

Plaintiff's limited use of pleading upon information and belief to support a capacity management system for the Comcast Technology Solutions CDN is permissible because many of the factual allegations bearing on the issue of infringement of claim 1 of the '347 Patent were made directly, without the use of the information and belief qualifier. See, e.g., '347 Claim Chart at 4–5, 10–13, 14–16, 19–22, 27, 28, 30–31, 33–34, 38, 42. The numerous features shared by the Comcast Technology Solutions CDN and the Amazon Web Services CDN as factually alleged in the '347 Claim Chart are enough "'to raise a reasonable expectation that discovery will reveal evidence' to support plaintiff's allegations," which is all that the plausibility standard requires of Plaintiff at this stage. Nalco, 883 F.3d at 1350 (quoting Twombly, 550 U.S. at 556).

Defendants aver that Plaintiff did not plausibly allege that the Amazon Web Services CDN infringes limitation [1g] of the claim 1 of the ’347 Patent. Defs.’ Br. at 11–13. Defendants contend that Plaintiff fails to allege that the Accused Products “estimate[e] bandwidth to be consumed on the service provider network.” Defendants assert that Plaintiff instead alleges “measur[ing] bandwidth and server capacity in each [Point of Presence] in real-time.” Id. Plaintiff responds that Defendants ignore allegations that the measured bandwidth is used by the request routing system to adjust traffic and that a person of ordinary skill in the art would understand that a capacity management system such as a CDN balancer necessarily estimates the bandwidth. Pl.’s Br. at 13; ’347 Claim Chart at 42–43. The ’347 Claim Chart reproduces an excerpt of a blog post from Amazon Web Services detailing how the Amazon Web Services CDN measures latency, performance, and load conditions to inform the connection characteristics and network conditions, as well as to measure bandwidth, server capacity, and link-level congestion to adjust traffic and routing. ’347 Claim Chart at 44. The ’347 Claim Chart also reproduces a graphic demonstrating CDN decisioning for optimal CDN usage, including controlling traffic distribution by static or dynamic allocation, known capacity, and historical reliability. ’347 Claim Chart at 45. Taken together, the Court concludes that Plaintiff has provided sufficient factual allegations that support a reasonable

inference that the Amazon Web Services CDN estimates the bandwidth to adjust traffic and routing.

Defendants assert that "Plaintiff's ['347] claim chart includes no allegations as to end users (or software provided to them) for limitation 1[g]." Defs.' Br. at 13. Plaintiff counters that the '347 Claim Chart makes a specific allegation of use of "known capacity and data on Client Application buffering and bit rate changes as well as [Internet Service Provider] and player data[.]" Pl.'s Br. at 13 (emphasis omitted); '347 Claim Chart at 45–46. The '347 Claim Chart also states that "a user establishes a [Transmission Control Protocol] connection" and "a user makes a [Domain Name System]," and refers to "[c]lient applications." '347 Claim Chart at 44–45. Considered as a whole, the Court concludes that Plaintiff has provided factual allegations that support a reasonable inference that end users or software provided to them perform limitation 1[g].

Accordingly, Plaintiff has sufficiently pled joint direct infringement of the '347 Patent against Defendants at the motion to dismiss stage.

Defendants contend that Plaintiff's '633 and '442 Claim Charts do not "identify the claimed 'video optimizer' (or 'video optimization server') and the 'other video optimizer.'" Defs.' Br. at 14–15. Plaintiff responds that the '633 and '442 Claim Charts allege that the Xfinity Stream or PeacockTV client applications receive segments of the source file from a plurality of tiers, nodes, data centers,

servers, or databases distributed across a global network. Pl.'s Br. at 14–15; '633 Claim Chart at 21, 30; '442 Claim Chart at 25, 38. Taken together, Plaintiff has provided factual allegations that support a reasonable inference that the segments are retrieved from at least a video optimizer and another video optimizer.

Defendants argue that the Sample M3U8 Playlist file for a Xfinity Stream session included in Plaintiff's '633 and '442 Claim Charts is limited to "four files all located in the same direction on the same server" and, therefore, does not allege the stitching limitation 1[f]. Defs.' Br. at 15–16; '633 Claim Chart at 45; '442 Claim Chart at 58. Plaintiff counters that the playlist file is exemplary and that the remainder of the claim charts describe that "the identified video segment files will either be retrieved from the multiple servers at the edge tier, the multiple servers at the mid tier, or the origin server." Pl.'s Br. at 16; '633 Claim Chart at 17–18, 30, 40, 41; '442 Claim Chart at 25, 38, 52, 54. The provided playlist file example illustrates how a plurality of video segments retrieved from a server are stitched together. Read in context with Plaintiff's allegations describing how the Xfinity Stream or PeacockTV client applications receive segments of the source file from a plurality of servers, the Court concludes that Plaintiff has provided sufficient factual allegations that support a reasonable inference that the plurality of video segments retrieved from a plurality of servers are stitched together to perform limitation 1[f].

Defendants assert in a footnote that Plaintiff speculates as to what a person of ordinary skill in the art would understand for the limitations 1[e] of the ’633 and ’442 Patents. Defs.’ Br. at 16, n.6; ’633 Claim Chart at 41; ’442 Claim Chart at 54. As similarly discussed above regarding the ’347 Patent, Plaintiff’s limited use of pleading upon information and belief is permissible because many of the factual allegations bearing on the issue of infringement of claim 1 of the ’633 and ’442 Patents were made directly, without the use of the information and belief qualifier. See, e.g., ’633 Claim Chart at 42–44 (describing uniform resource locators (“URLs”) as unique identifiers of specific content items, matching requests to files stored at a source by matching identifiers, and retrieving matching files from the source); ’442 Claim Chart at 54–57 (describing URLs as unique identifiers of specific content items, matching requests to files stored at a source by matching identifiers, and retrieving matching files from the source). This is enough to raise a reasonable expectation that discovery will reveal evidence to support Plaintiff’s allegations. Nalco, 883 F.3d at 1350.

Defendants aver that limitation 1[g] of the ’633 and ’442 Patents requires “video optimization servers ‘streaming’ video ‘to the user’ or ‘to the user device.’” Defs.’ Br. at 16. Defendants contend that this is incompatible with Plaintiff’s allegation that the streaming “is performed by software on the end-user device.” Defs.’ Br. at 16–17. Plaintiff asserts that Defendants’ argument should be

considered waived due to Defendants' failure to raise this argument in Defendants' Motion to Dismiss. Pl.'s Br. at 16–17. Defendants respond that Plaintiff's allegation was asserted for the first time in Plaintiff's Second Amended Complaint. Defendants' Reply in Supp. Mot. Dismiss Pl.'s Second Am. Compl. ("Defs.' Reply Br.") at 8. Because Defendants did not previously have the opportunity and obligation to address Plaintiff's factual allegation until this allegation was made in the Second Amended Complaint, Defendants' argument is not waived. Plaintiff argues that "limitation [1g] requires the step of 'streaming the stitched optimized version . . . for playback on the client [] device.'" Pl.'s Br. at 17.

The '633 Claim Chart states:

> Once the Xfinity Stream or PeacockTV client, or other video player running on the client device, has stitched together the sequence of downloaded optimized video segments, it plays back the assembled stream . . . .

'633 Claim Chart at 47. This alleges that the client device stitches together the segments after those segments are downloaded from servers to the client device. Plaintiff further contends that the stitched-together segments form an assembled stream for playback on the client device.

Plaintiff argues that "streaming" occurs on the client device. Pl.'s Br. at 16–17. Under Iqbal/Twombly, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and the ability of the Court to draw a reasonable inference that a defendant is liable for the misconduct alleged depends on the

factual content pled. Iqbal, 556 U.S. at 678. The factual allegations in the Second Amended Complaint are sufficient to make Plaintiff's "theoretically viable claim plausible." McDermott, 649 F. App'x at 267–68. Accepting the facts as alleged to be true, and viewing Plaintiff's allegation in the light most favorable to Plaintiff, the Court can reasonably infer that Defendants' Xfinity Stream or PeacockTV client, or other video player running on the client device, performs the claimed stitching before streaming, and both are performed on the client device.

Accordingly, Plaintiff has sufficiently pled joint direct infringement of the '633 and '442 Patents against Defendants to survive a motion to dismiss.

## II. Joint Direct Infringement of the '347, '633, and '442 Patents by the Amazon Web Services CDN

### A. Direction or Control of Performance Established by Contract

Plaintiff contends that the Court failed to correctly apply Third Circuit law under McDermott, 649 F. App'x at 267–68, particularly as applied in DSM IP, 700 F. Supp. 3d at 196. Pl.'s Mot. at 6–7. Plaintiff argues that Plaintiff's claim charts cite specific factual allegations as to Defendants' relationship with Amazon Web Services and their infringement of the '347, '633, and '442 Patents through the use of the Amazon Web Services CDN, and that Plaintiff pleads "upon information and belief" only in the limited circumstance that contracts between Amazon Web Services and Defendants exist. Id. at 7.

Defendants respond that "Plaintiff's primary argument for reconsideration is that the Court should have analyzed the same facts and law but should have reached a different conclusion." Defs.' Resp. at 7. Defendants emphasize that "motions for 'reargument or reconsideration should not be granted if the 'proponent simply rehashes materials and theories already briefed, argued and decided.'" Id. at 8.

Neither reargument nor reconsideration is "an appropriate vehicle to reargue issues that the court has already considered and decided." Adobe Inc. v. Marsh Funding LLC, No. CV 24-861-GBW, 2024 WL 4751426, at *3 (D. Del. Nov. 12, 2024) (quoting Acco Brands USA LLC v. Performance Designed Prods. LLC, No. CV 23-cv-437-GBW, 2024 WL 3043311, at *1 (D. Del. June 18, 2024)). Applying the appropriate Third Circuit law under McDermott and DSM IP, this Court previously considered Plaintiff's claim charts, the alleged specific factual allegations therein, Plaintiff's manner of use of pleading "upon information and belief," and whether "[m]any of the factual allegations bearing on the issue of infringement were made directly, without the use of the 'information and belief' qualifier." 700 F. Supp. 3d 189, 195–97 (D. Del. 2023); see Opinion and Order at 10–13. The Court notes that the Second Amended Complaint concludes that "[t]he direction or control of performance of the steps in [the '347, '633, and '442 Patents] on the Amazon Web Services CDN is established by contract." Second

Am. Compl. ¶¶ 14, 27, 40. The specific facts alleged by Plaintiff are: (1) Plaintiff's statement that Amazon Web Services offers Private Pricing Agreements, which is supported by an exhibit of an Amazon Web Services webpage describing pricing models (that fails to mention Defendants) and (2) Plaintiff's unsubstantiated statement that Comcast Cable is a large enterprise customer of Amazon Web Services. See, e.g., Second Am. Compl. ¶¶ 14–15, 27–28, 40–41. There is no factual connection shown between Amazon Web Services and Comcast Cable, other than an unsubstantiated statement by Plaintiff.

In view of the facts and the law, this Court held previously that Plaintiff had not made factual allegations sufficient to make Plaintiff's "theoretically viable claim plausible" and that Plaintiff alleged only a "sheer possibility" of direction and control without alleging "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" McDermott, 649 F. App'x at 267–68; Iqbal, 556 U.S. at 678; see Opinion and Order at 12. The Court concluded that "the use of 'information and belief' pleading in the Second Amended Complaint [was] not 'consistent with the purposes previously approved by the Third Circuit and other courts.'" DSM IP, 700 F. Supp. 3d at 197; Opinion and Order at 12. Plaintiff's renewed arguments do not convince this Court to reverse its prior

rulings based on misunderstanding, error of apprehension, or clear error of law or fact.

Plaintiff argues that Defendants and the Court relied on the "mastermind" standard for divided infringement of Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc., No. 2:19-CV-00514-JDW, 2021 WL 3722329 (E.D. Pa. Aug. 23, 2021) that was rejected by the U.S. Court of Appeals for the Federal Circuit in Travel Sentry, Inc. v. Tropp, 877 F.3d 1370 (Fed. Cir. 2017). Pl.'s Mot. at 8–9.

This Court did not apply the "mastermind" standard. Applying Lyda and Akamai, this Court in the Opinion and Order evaluated whether Plaintiff presented a plausible claim that Defendants "exercise[d] the requisite 'direction or control' over the others' performance or . . . form[ed] a joint enterprise such that performance of every step is attributable to the controlling party." Lyda, 838 F.3d at 1339 (citing Akamai, 797 F.3d at 1022); Opinion and Order at 9. In particular, this Court considered whether factual allegations that an actor acts through an agent or contracts with another to perform one or more steps of the claimed method or that the alleged infringer "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance," Akamai, 797 F.3d at 1022–23, were present here and concluded that such facts were not sufficiently pled by Plaintiff. Opinion and Order at 9–10. The Court fully considered the pleadings

and factual allegations presented by Plaintiff and held that Plaintiff merely alleged a "sheer possibility" of direction and control over Amazon that was insufficient to overcome a motion to dismiss under Akamai. Id. at 12. This Court could not reasonably infer from the factual allegations and pleadings that there was a contractual relationship between Defendants and Amazon to establish the requisite direction or control or joint enterprise. Id. The Court also could not reasonably infer from the factual allegations and pleadings that there was performance by Amazon of every step of the Asserted Patents on behalf of the Defendants as a directing/controlling party, or in a joint enterprise. Id. Plaintiff's allegation is unfounded that the Court's use of the word "required" invoked the "mastermind" standard. Pl.'s Mot. at 8. "[R]equired" in this context refers to the absence of factual allegations of performance by Amazon of the steps of the Asserted Patents on behalf of the Defendants as a directing/controlling party or in a joint enterprise.

Plaintiff asserts that this Court did not address whether Plaintiff plausibly pled that end users acted under Defendants' direction or control. Pl.'s Mot. at 4–5. Because Amazon's alleged involvement was essential to Plaintiff's theory of joint direct infringement for the '347, '633, and '442 Patents for the Amazon Web Services CDN, the Court concluded that Plaintiff's direct infringement claims for the '347, '633, and '442 Patents could be dismissed at that juncture without further analysis of whether Plaintiff also alleged that Defendants direct and control end

users to perform the remaining steps. See Opinion and Order at 13. In so far as Plaintiff argues that this Court's conclusion as to the '444 Patent should apply and preclude dismissal of the '347, '633, and '442 Patents, see Pl.'s Mot. at 4, because the claimed invention and facts alleged regarding the '347, '633, and '442 Patents in Plaintiff's Second Amended Complaint and the respective claim charts are distinct from those regarding the '444 Patent, the Court did not reach the same conclusion. Plaintiff's arguments do not justify the reversal of this Court's prior holdings based on misunderstanding, error of apprehension, or clear error of law or fact.

**B. Leave to Amend/Futility**

Plaintiff argues for leave to amend the complaint to provide additional support for Defendants' "direction or control" of Amazon Web Services. Pl.'s Mot. at 9. Plaintiff emphasizes that "dismiss[al] with prejudice is a severe and disfavored remedy." Id. at 9–10. Plaintiff urges that the factual allegations, including statements made by Defendants during the Oral Argument held June 9, 2026 and various webpages, support that amending the complaint to recite factual allegations regarding the relationship of Defendants with Amazon Web Services would not be futile and would not unfairly prejudice Defendants. Id. at 10–11. Plaintiff further argues that the factual allegations render it "not only possible, but probable that there is a contractual relationship between the [D]efendants and

[Amazon Web Services]," and that satisfies both prongs of Akamai's "conditioned participation/benefits" test. Id. at 11.

Defendants respond that this Court held that it would be unfairly prejudicial to Defendants to permit a fourth opportunity to draft a sufficient complaint, including twice after seeing Defendants' motions to dismiss. Defs.' Resp. at 8–9.

Under Federal Rule of Civil Procedure 15(a), leave to amend "should [be] freely give[n] [] when justice so requires." Fed. R. Civ. P. 15(a)(1)(2). Although this Court concluded that Plaintiff had three prior opportunities to attempt to draft sufficient claims in support of its pleading and noted that the Court would not permit Plaintiff a fourth chance given its repeated inability to cure the same deficiencies, Second Am. Compl. at 14, the Court will allow Plaintiff leave to amend its complaint for a fourth time due to newly-provided factual support.

Plaintiff argues that there is factual support showing a probable contractual relationship between Defendants and Amazon Web Services, which satisfies Akamai's "conditioned participation/benefits" test. Pl.'s Mot. at 9. In support of its motion for reconsideration, Plaintiff presents, for the first time, three publicly-available webpages in support of its position that Comcast has an extensive relationship with Amazon Web Services. Pl.'s Mot. at 10–11. Defendants respond that "Plaintiff's evidence could have been—but was not—presented in response to Defendants' motion" and therefore "it cannot support a motion for

reconsideration." Defs.' Resp. at 10–11. "The decision to grant a motion for re-argument or reconsideration is squarely within the discretion of the district court." Adobe Inc., 2024 WL 4751426 at *3 (quoting Amgen Inc. v. Amneal Pharms. LLC, No. CV 16-cv-853-MSG, 2021 WL 4843959, at *1, 2021 (D. Del. Oct. 18, 2021)). Allowing Plaintiff to file a further amended complaint, which alleges facts directed to Defendants' contractual relationship with Amazon Web Services, would not be futile. See Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1127 (Fed. Cir. 2018).

The newly-presented documents plausibly demonstrate that Defendants have a contractual relationship with Amazon Web Services such that Amazon Web Services provides its products and services to store and deliver content to end users of Defendants' products and services. For example, Exhibit D to Plaintiff's Motion is a web page showing that Comcast Technology Solutions and Amazon Web Services share a partnership through which Comcast Technology Solutions uses Amazon Web Services' infrastructure to "ingest, manage, localize, and deliver content." Pl.'s Mot., Ex. D (D.I. 61-5) at 2. Exhibit E to Plaintiff's Motion is a web page stating that Comcast Cable used Amazon Web Services facilities for the XFINITY X1 video product, Xfinity xFi personalized Wi-Fi network, and X1 platform for voice control, and plans to make future use of Amazon Web Services for new products in the future. Pl.'s Mot., Ex. E (D.I. 61-6) at 3. Exhibit F to

Plaintiff's Motion is a web page showing that NBCUniversal and Sky partnered to develop streaming service Peacock, which used various Amazon Web Services products for streaming services, including Amazon Elastic Compute Cloud for compute capacity, AWS Transit Gateway as a cloud router to connect virtual private cloud and on-premises networks, AWS AppSync for application development, and AWS Elemental MediaStore as a media storage service "to deliver live streaming video content—to create video-on-demand content for broadcast and multiscreen delivery at scale." Pl.'s Mot., Ex. F (D.I. 61-7) at 2–4.

When read in the context of Plaintiff's allegations and alleged factual support, these documents support an inference that Amazon Web Services products, allegedly utilized by Defendants, perform the steps of the '347, '633, and '442 Patents on behalf of the Defendants as a directing/controlling party or joint enterprise. For example, the '633 and '442 Claim Charts refer to AWS Elemental MediaTailor, AWS Elemental MediaConvert, AWS Elemental MediaLive, AWS Elemental MediaPackage, AWS Elemental Software, and a MediaStore container. See, e.g., '633 Claim Chart at 7, 13, 15; '442 Claim Chart at 9, 11, 21, 23, 32, 33, 48, 49, 57, 61–64. Supported by these webpages, Plaintiff plausibly alleges that relationships exist between Defendants and Amazon Web Services such that Defendants act through an agent or contract with another to perform one or more steps of the claimed method or that Defendants "condition[] participation in an

activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." Akamai, 797 F.3d at 1022–23.

Accordingly, the Court grants Plaintiff leave to amend its joint direct infringement claims involving the Amazon Web Services CDN for the '347, '633, and '442 Patents.

## III. Indirect Infringement of the '347, '633, and '442 Patents

Defendants argue that Plaintiff's induced infringement claims must be dismissed and stricken from the Second Amended Complaint due to Plaintiff's failure to seek leave of the Court to amend pursuant to Federal Rule of Civil Procedure 15(a). Defs.' Br. at 18–20.

In response, Plaintiff agrees to withdraw its allegations of induced infringement in the Second Amended Complaint, and states that it will seek leave to amend at a later time. Pl.'s Br. at 1 n.1. Accordingly, the Court need not opine on whether Plaintiff alleged induced infringement of the '347, '633, and '442 Patents sufficiently, and paragraphs 17–18, 21, 30–31, 34, 43–44, and 47 of the Second Amended Complaint are deemed dismissed.

**IV. Willful Infringement of the ’347, ’633, and ’442 Patents**

Under 35 U.S.C. § 284, the Court may increase the amount of damages assessed by up to three times. 35 U.S.C. § 284. The U.S. Supreme Court has observed that enhanced damages

> are not to be meted out in a typical infringement case, but are instead designed as a “punitive” or “vindictive” sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.

Halo Elecs., Inc. v. Pulse Elecs. Inc. (“Halo”), 579 U.S. 93, 103–04 (2016).

For willful infringement claims, “the patentee must allege facts in its pleading plausibly demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim[.]” Välinge Innovation AB v. Halstead New England Corp., No. 16-cv-1082-LPS-CJB, 2018 WL 2411218, at *12 (D. Del. May 29, 2018), report and recommendation adopted, 2018 WL 11013901 (D. Del. Nov. 6, 2018). “The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless.” Halo, 579 U.S. at 105; see also WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016) (“Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages.”). Subjective willfulness may be found when “the risk of infringement ‘was either

known or so obvious that it should have been known to the accused infringer.'" Halo, 579 U.S. at 101 (quoting In re Seagate Techs., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

At the pleading stage, this standard can be distilled into three elements, that the accused infringer: (1) was aware of the patent; (2) infringed the patent after becoming aware of its existence; and (3) knew or should have known that its conduct amounted to infringement. See Välinge Innovation AB, 2018 WL 2411218, at *13. The Court need not evaluate whether each allegation, taken alone, gives rise to a reasonable inference of pre-suit knowledge of the patent, but may consider the allegations as a whole. Elm 3DS Innovations, LLC v. Samsung Elecs. Co., No. 14-cv-1430, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015), report and recommendation adopted, 2016 WL 1274812 (D. Del. Mar. 21, 2016); SoftView LLC v. Apple Inc., No. 10-389-LPS, 2012 WL 3061027, at *6 (D. Del. July 26, 2012).

Defendants argue that Plaintiff fails to plead willful infringement properly because the original Complaint did not adequately allege infringement by any Defendant and the claim charts did not address any of the Comcast Defendants' products. Defs.' Br. at 20–21. Although the original Complaint addressed the PeacockTV streaming service, Defendants aver that the original Complaint failed to allege infringement sufficiently. Id. Because Plaintiff did not file an opposition

to Defendants' original motion to dismiss and filed the Amended Complaint instead, Defendants contend that Plaintiff concedes the original Complaint did not provide knowledge of infringement. Id. at 20–21. Defendants argue further that the willful infringement claims are conclusory because the Second Amended Complaint does not provide any facts supporting an inference that Defendants deliberately or intentionally infringed. Id. at 21–22.

Plaintiff responds that Defendants seek to impose a heightened standard for pleading infringement by arguing that the original Complaint must have alleged infringement adequately. Pl.'s Br at 19–21. Plaintiff recites the standard for pleading a claim of willful infringement and avers that the Court need only determine whether Defendants were provided with fair notice of the claim rather than "whether there is ultimately merit in that claim." Id. at 20. Plaintiff requests that if the Court grants dismissal of the willful infringement claim, or any portion of Defendants' Motion to Dismiss, then Plaintiff be given leave to amend its willful infringement claim to connect it to the filing of the Second Amended Complaint. Id. at 20–21.

This Court has held previously that an original complaint, later superseded by an amended complaint, is sufficient to support a post-suit willful infringement claim at the motion to dismiss stage. See, e.g., Technoprobe S.p.A. v. Formfactor, Inc., C.A. No. 230842-JCG, 2024 WL 2271885, at *8 (D. Del. May 20, 2024);

Staton Techiya, LLC v. Harman International Industries, Inc., 734 F. Supp. 3d 354, 367–68 (D. Del. 2024). The Court cannot draw a plausible inference in Plaintiff's favor that the Comcast Defendants committed subjective willful infringement as of the filing and service of the original Complaint because the original Complaint did not contain factual allegations sufficient to infer that the Comcast Defendants' Accused Products and Services satisfied the claim limitations of the Asserted Patents or that the Comcast Defendants had notice of what conduct of theirs amounted to infringement. See Välinge Innovation AB, 2018 WL 2411218, at *12–13. As held previously by this Court, the Amended Complaint failed to allege direct infringement by the Comcast Defendants. See Opinion and Order (Mar. 11, 2026) at 9–10. Accordingly, Plaintiff's willful infringement claims for the '347, '633, and '442 Patents are dismissed without prejudice with respect to the Comcast Defendants. Because Plaintiff's joint direct infringement claims for the '347, '633, and '442 Patents survive today, the Court grants Plaintiff leave to amend its willful infringement claims for the '347, '633, and '442 Patents.

## V. Motion to Strike Allegations in Plaintiff's Infringement Contentions for the '444 Patent

### A. Single-Entity Direct Infringement

Defendants contend that Plaintiff improperly includes allegations in its Infringement Contentions based on single-entity direct infringement that were

dismissed by this Court in the Opinion and Order. Defs.' Letter at 1; see also Defs.' Mot. Strike; see also Defs.' Ex. 1, Pl.'s Disclosure of Asserted Claims and Infringement Contentions for Defendants ("Pl.'s Infringement Contentions") (D.I. 83-1).

This Court dismissed all of Plaintiff's single-entity direct infringement claims because Plaintiff abandoned or waived these claims by Plaintiff's failure to address Defendants' argument that Plaintiff did not show that any Defendant performs every step of the Asserted Patents. Opinion and Order at 7–8. For example, Count IV of Plaintiff's Second Amended Complaint (regarding the '444 Patent) alleged that "Defendants have directly infringed and continue to directly infringe under 35 U.S.C. § 271 (a) . . . by performing each step of the claimed method either directly through their own actions and/or by directing or controlling the performance of such steps by third parties[.]" Second Am. Compl. ¶ 51.

In Plaintiff's Infringement Contentions, Plaintiff alleges direct infringement and joint direct infringement of claims 1, 5, 6, and 7 and alleges direct infringement of claims 8, 12, 13, 14, 15, 19, 20, and 21 of the '444 Patent. Pl.'s Infringement Contentions at 3–4. Defendants argue that the direct infringement allegations for all of these claims are improper and should be stricken. Defs.' Letter at 1–2. Plaintiff argues that because this Court did not dismiss Plaintiff's

allegations of joint direct infringement in the Order, Plaintiff's allegations of direct infringement survive. Pl.'s Letter at 1–2.

Plaintiff correctly notes that, pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), the remedy is the dismissal of each individual claim that fails to state a claim upon which relief can be granted. Id. at 1–2; Fed. R. Civ. P. 12(b)(6). Plaintiff asserts that direct infringement and joint direct infringement together comprise a single claim. Id. Contrary to Plaintiff's contention, single-entity direct infringement states a first distinct claim and joint direct infringement states a second distinct claim. The cases cited by Plaintiff illustrate this.

The court in Progress Rail Servs. Corp. v. Westinghouse Air Brake Techs. Corp. ("Progress Rail"), held that a first act in breach of a contract and a second act in breach of the same contract were two separate claims for relief such that the claim for breach by the first act was dismissed alone. No. CV 23-983-CFC, 2026 WL 252270 at *2 (D. Del. Jan. 30, 2026). The district court in TQP Dev., LLC v. Sony Computer Ent. Am. LLC denied a motion to dismiss a claim of direct infringement of the claims of a patent and separately declined to preclude a possible claim of joint direct infringement of the same claims. No. 2:12-CV-195-JRG-RSP, 2013 WL 12248090 at *1–2 (E.D. Tex. Mar. 26, 2013). This Court notes that TQP Dev., LLC pre-dates the pleading standard for joint direct infringement under Akamai and Lyda. The district court in Fate Therapeutics Inc.

v. Shoreline Biosciences, Inc. denied as moot a defendant's suggestion of a claim of direct infringement by use of a third-party product, noting that it is unclear that the district court could dismiss only the claim of direct infringement by use of third-party product when direct infringement was otherwise adequately pled. 665 F. Supp. 3d 1214, 1120–21, 1121 n.5 (S.D. Cal. 2023).

This Court held that Plaintiff sufficiently pled joint direct infringement of the '444 Patent but waived or abandoned its claim of single-entity direct infringement. Opinion and Order at 7–8, 16–20. The pleading standard for direct infringement is not the same as the pleading standard for joint direct infringement under Akamai and Lyda. Compare id. at 7–8, with id. at 9–10. Plaintiff's claim of single-entity direct infringement is separate and distinct from its claim of joint direct infringement and the facts pled for each claim are distinct and must satisfy a different pleading standard.

Because Plaintiff's single-entity direct infringement claim for the '444 Patent was dismissed by this Court, the Court grants Defendants' Motion to Strike the single-entity direct infringement allegations in Plaintiff's Infringement Contentions.

## B. Induced Infringement

Defendants argue that Plaintiff improperly includes allegations in its Infringement Contentions based on induced infringement. Defs.' Letter at 2.

Plaintiff's allegations of induced infringement of the '444 Patent were dismissed because Plaintiff agreed to withdraw its allegations after Defendants argued that Plaintiff failed to seek leave of the Court to amend pursuant to Federal Rule of Civil Procedure 15(a). Opinion and Order at 20–21; Fed. R. Civ. P. 15(a).

Plaintiff argues that including these allegations in the Infringement Contentions "resolves the issue" of the pending Motion for Clarification and Reargument and "minimizes the filings of motions." Pl.'s Letter at 3. Plaintiff asserts that pending the outcome of the Motion for Clarification and Reargument, it will move to amend the complaint regarding induced infringement. Id. Defendants aver that Plaintiff is required to file a motion to amend Plaintiff's Third Amended Complaint to reassert its inducement claim, and only if the Court grants that motion may Plaintiff seek leave to amend its Infringement Contentions. Defs.' Letter at 2–3.

Because Plaintiff has yet to file a motion to amend Plaintiff's Third Amended Complaint to reassert its inducement claim, it is improper for Plaintiff to include inducement allegations in its Infringement Contentions. Accordingly, this Court grants Defendants' Motion to Strike the induced infringement allegations in Plaintiff's Infringement Contentions.

## CONCLUSION

Upon consideration of Plaintiff's Motion for Clarification and Reargument (D.I. 61), Defendants' Motion to Strike Improper Infringement Contentions (D.I. 82), and all other papers and proceedings in this action, it is hereby

**ORDERED** that Plaintiff's Motion for Clarification and Reargument (D.I. 61) construed as a Motion for Reconsideration is granted; and it is further

**ORDERED** that the dismissal with prejudice of Plaintiff's joint direct infringement claims for the '347, '633, and '442 Patents in the Opinion and Order granting in part and denying in part Defendants' Motion to Dismiss dated June 24, 2026 (D.I. 59) is withdrawn; and it is further

**ORDERED** that Plaintiff is granted leave to amend Plaintiff's joint direct infringement claims for the '347, '633, and '442 Patents; and it is further

**ORDERED** that Plaintiff's induced infringement claims for the '347, '633, and '442 Patents are deemed withdrawn and dismissed without prejudice; and it is further

**ORDERED** that Plaintiff's willful infringement claims for the '347, '633, and '442 Patents are dismissed without prejudice; and it is further

**ORDERED** that Plaintiff shall file a Fourth Amended Complaint on or before November 17, 2026; and it is further

**ORDERED** that Defendants shall respond to the Fourth Amended

Complaint on or before December 1, 2026; and it is further

**ORDERED** that Defendants' Motion to Strike Improper Infringement Contentions (D.I. 82) is granted; and it is further

**ORDERED** that Plaintiff shall amend its Disclosure of Asserted Claims and Infringement Contentions for Defendants to strike Plaintiff's single-entity direct infringement claims for the '444 Patent; and it is further

**ORDERED** that Plaintiff shall amend its Disclosure of Asserted Claims and Infringement Contentions for Defendants to strike Plaintiff's induced infringement claims for the '444 Patent; and it is further

**ORDERED** that Plaintiff shall serve on Defendants its Amended Disclosure of Asserted Claims and Infringement Contentions for Defendants on or before November 17, 2026; and it is further

**ORDERED** that Defendants shall serve on Plaintiff their Amended Initial Invalidity Contentions on or before December 1, 2026.

IT IS SO ORDERED this 3rd day of November, 2026.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

*Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.